[Cite as *State v. Parks*, 2013-Ohio-2492.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| MEGAN K. PARKS | : | Case No. 12-CA-87 |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Licking County
Municipal Court, Case No. 12-TRC-
08828


JUDGMENT:      AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED


DATE OF JUDGMENT ENTRY:      June 12, 2013


APPEARANCES:

For Plaintiff-Appellant:

J. MICHAEL KING
PATASKALA CITY PROS. OFFICE
35 South Park Place, Suite 35
P.O. Box 4010
Newark, OH 43058-4010

For Defendant-Appellee:

ROBERT E. CALESARIC
35 South Park Place, Suite 150
Newark, OH 43055

*Delaney, J.*

{¶1}   The State of Ohio appeals from the November 6, 2012 judgment entry of the Licking County Municipal Court granting in part and overruling in part the suppression motion of appellee Megan K. Parks.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   This case arose around 3:00 a.m. on August 5, 2012 when Officer Colles of the Pataskala City Police Department was on routine patrol in uniform and driving a marked patrol vehicle equipped with a camera mounted on the windshield.  Colles was traveling eastbound on Broad Street in the area of Etna Parkway when he passed Parks driving westbound.  Colles observed the tire of Park's vehicle over the right side of the white or "fog" line on the roadway, to the extent that he described the line as between the two front tires of the vehicle.

{¶3}   Colles turned around and caught up to Parks, activating his overhead lights.  Parks had pulled into a residential driveway and stopped, turning off her lights, despite the fact that she did not live there.  Colles approached the driver's side of the vehicle, explained the reason for the stop, and asked for Parks' information.  Detecting a slight odor of an alcoholic beverage, Colles asked Parks if she had had anything to drink, and she said no.  Colles asked her to say the alphabet and noted she slurred a few letters and skipped some letters.  Parks also had bloodshot, glassy eyes.

{¶4}   Colles asked Parks to step out of the vehicle and proceeded to administer a series of standardized field sobriety tests (SFSTs).  Once Parks was

outside the vehicle, Colles noted a more distinct odor of an alcoholic beverage about her person.

{¶5} Colles was trained in the administration of SFSTs in accord with guidelines from the National Highway Traffic Safety Administration (NHTSA).

{¶6} Parks first submitted to the horizontal gaze nystagmus (HGN) test, and Colles testified that he observed six out of six possible clues of impairment. Next, Parks performed the walk-and-turn test, on which she indicated three clues of impairment. Finally, on the one-leg stand test, Colles noted three clues of impairment.

{¶7} Parks was placed under arrest for O.V.I and later refused to submit to a breath test. Colles further testified he read appellee the BMV 2255 form and Mirandized her. At some point after he requested that she take a breath test, and he made her aware of the legal implications of refusing to do so, Parks asked to call a lawyer. Colles testified he did not permit her to call a lawyer.

{¶8} Parks was charged by uniform traffic ticket with one count of O.V.I. pursuant to R.C. 4511.19(A)(1)(a) and one count of a marked lanes violation pursuant to R.C. 4511.33. She entered pleas of not guilty and filed a motion to suppress evidence flowing from the traffic stop and resulting arrest. A hearing was held and the trial court sustained the motion in part and overruled it in part. Relevant to this appeal, the trial court suppressed the portion of the HGN test involving the onset of nystagmus at maximum deviation, finding the officer did not conduct that portion of the test in substantial compliance with NHTSA protocols. The trial court also suppressed the evidence that Parks refused to submit to a breath test, finding that her request to speak with an attorney when asked to take a breath test did not constitute a refusal.

{¶9} The State now appeals from the judgment entry of the trial court sustaining Parks' motion to suppress in part and overruling it in part.

## ASSIGNMENTS OF ERROR

{¶10} Appellant raises two Assignments of Error:

{¶11} "I.   THE TRIAL COURT ERRED WHEN IT SUPPRESSED THE MAXIMUM DEVIATION PORTION OF THE HORIZONTAL GAZE NYSTAGMUS TEST."

{¶12} "II. THE TRIAL COURT ERRED IN APPLYING AN EXCLUSIONARY RULE TO THE DEFENDANT'S REQUEST TO SPEAK WITH AN ATTORNEY BEFORE REFUSING THE REQUESTED BREATH TEST."

## ANALYSIS

### I.

{¶13} The State first asserts the trial court erred in suppressing the maximum deviation portion of the HGN test.  We disagree.

{¶14} During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal

standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶15} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See, *Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994).

{¶16} Parks was charged with one count of O.V.I. pursuant to R.C. 4511.19(A)(1)(a) which states, "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply: [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." R.C. 4511.19(D)(4) states the following:

> As used in divisions (D)(4)(b) and (c) of this section, 'national
> highway traffic safety administration' means the national highway

traffic safety administration established as an administration of the United States department of transportation under 96 Stat. 2415 (1983), 49 U.S.C.A. 105.

In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol, a controlled substance, or a metabolite of a controlled substance in the whole blood, blood serum or plasma, breath, or urine, if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:

(i) The officer may testify concerning the results of the field sobriety test so administered.

(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.

(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.

{¶17} Errors that are excusable under the substantial-compliance standard are characterized as "minor procedural deviations."  *State v. Burnside,* 100 Ohio St.3d 152, 797 N.E.2d 71, 2003-Ohio-5372, ¶ 34, citing *State v. Homan*, 89 Ohio St.3d 421, 426, 732 N.E.2d 952 (2000).   The burden is on appellant to show by clear and convincing evidence that the officer administered the field sobriety tests in substantial compliance with the NHTSA guidelines. *State v. Verity*, 5th Dist. No. 2009CA00156, 2010-Ohio-1151, ¶ 20; R.C. 4511.19(D)(4)(b).

{¶18} The State takes issue with the trial court's findings of fact with respect to Colles' administration of the HGN test.  The trial court found that when Colles checked Parks' eyes for nystagmus at maximum deviation, he checked the right eye three times but the left eye only once.  (The NHTSA manual requires both eyes to be checked twice.)   The trial court further found this error to be more than a "minor procedural deviation" and therefore suppressed that portion of the HGN test. *Verity*, supra, 2010-Ohio-1151.

{¶19} We are bound to give deference to the trial court's findings of fact and to accept those supported by some competent, credible evidence.  Colles' testimony at the hearing was equivocal at best, admitting that only one "pass" was made of Parks' left eye with the stimulus although she stopped following it.   (T. 43-44).   The dashboard camera video of the HGN test shows Colles making multiple passes of each eye with the stimulus, but it is not clear which portion of the test Colles was on, with which pass: lack of smooth pursuit, nystagmus at maximum deviation, or onset of nystagmus prior to 45 degrees.  The trial court was in the best position to resolve the ambiguities and evaluate the credibility of the witness, and we conclude the trial court's findings of fact as to the error on the HGN test is supported by the evidence.

{¶20} We find the trial court did not err is suppressing the maximum deviation portion of the HGN test.  The first assignment of error is overruled.

II.

{¶21} In the second assignment of error, the State contests the trial court's legal conclusion, arguing it should not have excluded evidence of Parks refusal of the breath test altogether due to Colles' disregard for her request to call an attorney.  We agree.

{¶22} R.C. 2935.20 affords a statutory right to counsel, providing in pertinent part:

> After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to

communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a reasonable number of telephone calls or in any other reasonable manner. Such person shall have a right to be visited immediately by any attorney at law so obtained who is entitled to practice in the courts of this state, and to consult with him privately. No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation provided for by this section.

* * * *.

{¶23} The Sixth Amendment to the United States Constitution also guarantees the right to counsel at "critical stages" of criminal proceedings, and the Ohio Supreme Court has determined that the stage at which an officer requests a chemical test for alcohol content is not such a critical stage. *Dobbins v. Bur. of Motor Vehicles*, 75 Ohio St.3d 533, 537, 664 N.E.2d 908 (1996).

{¶24} In *State v. Griffith,* the Ohio Supreme Court held imposition of the exclusionary rule does not lie as remedy for police violation of an accused's statutory right to counsel in an O.V.I. case; "[i]n other words, the prosecution can present evidence of the result of an otherwise admissible breath alcohol content analysis of the accused; the evidence is not deemed inadmissible solely because the police failed to comply with the statutory right to counsel." *State v. Franz*, 5th Dist. No. 04CA000013, 2005-Ohio-1755, ¶35, appeal not allowed, 106 Ohio St.3d 1508, 2005-

Ohio-4605, 833 N.E.2d 1250, citing *State v. Griffith*, 74 Ohio St.3d 554, 660 N.E.2d 710 (1996).

{¶25} In the instant case, there is no breath test result because Parks did not submit to a breath test. Upon direct examination, Colles testified that Parks refused the proffered BAC Datamaster test. T. 22. Upon cross examination, Colles further explained that he read the BMV 2255 form which advises Parks of her rights and the penalties for refusing a chemical test, and Mirandized her. The time frame of events was less than one hour: the traffic stop was at 3:05 a.m. and the refusal was marked at 3:53 a.m. Colles agreed that Parks "ask[ed] to talk to an attorney before about whether or not she should test" but he did not afford her the opportunity to do so, despite still having time to do so, presumably, within the two-hour testing window.

{¶26} The trial court found as follows:

> Whether or not the refusal to submit prior to consulting with an attorney constitutes a refusal to test at all is a factual determination based on the circumstances of the case. *Bushey,* [Ohio App.3d 832, 836, 649 N.E.2d 1243, 1245 (12th Dist.1994)]. In this case, the defendant was asked to submit less than an hour after the time of the alleged offense. The officer had more than two hours to obtain the breath sample and had already complied with statutory requirements regarding the test. R.C. 4511.191. Furthermore, he did not even permit the defendant to attempt to contact an attorney, flatly refusing her request when it was made. Under these facts and circumstances, the Court holds that her

request was made in good faith and that her demurrer when asked to take the test was not a refusal. As such, the State may not introduce any evidence or testimony regarding the defendant not submitting to a breath test.

{¶27} *Bushey* notes that a good-faith desire to contact an attorney before submitting to a chemical test does not necessarily constitute refusal to take a test as long as there is no attempt to delay the test beyond the statutory two-hour time frame; furthermore, whether the refusal to submit to the test is a "refusal" within the contemplation of R.C. 4511.191 or a good faith request to exercise one's statutory right is a factual determination to be made by the trial court based upon the facts and circumstances of each case. *State v. Bushey,* 98 Ohio App.3d 832, 836, 649 N.E.2d 1243 (12th Dist.1994). The trial court found Parks request to contact an attorney to be in good faith and not to constitute a refusal, and we find the trial court's findings of fact on this point to be supported by competent, credible evidence.

{¶28} In terms of the trial court's application of the law to those facts, however, we find the trial court erred in applying an exclusionary remedy. The exclusionary rule does not apply where an officer failed to comply with the statutory right to counsel in these circumstances. *Griffith*, supra. An exclusionary remedy would not be appropriate had appellee taken the test; it is no less inappropriate where appellee did not take the test. We find the parties may present the evidence surrounding the proffer of the breath test, and Parks response, and the finder of fact may weigh the evidence accordingly.

**CONCLUSION**

{¶29} For the foregoing reasons, the decision of the Licking County Municipal Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

By: Delaney, J.

Hoffman, P.J. and

Wise, J. concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE